IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF ARKANSAS
CENTRAL DIVISION

**RUSSELLVILLE LEGENDS, LLC**                                                                    **PLAINTIFF**

v.                            Case No. 4:19-CV-00524-BSM

**UNITED STATES ARMY CORPS
OF ENGINEERS,** *et al.*                                                                         **DEFENDANTS**

## ORDER

Plaintiff's motion for summary judgment [Doc. No. 16] is denied. Defendant's cross-motion for summary judgment [Doc. No. 21] is granted.

### I. BACKGROUND

Section 408 of the Clean Water Act requires anyone seeking to alter, use, or occupy a civil works built by the United States for flood control to obtain permission from the United States Army Corps of Engineers. 33 U.S.C. § 408(a). Russellville Legends, LLC ("Russellville") is seeking judicial review of the Corps's denial of its proposed construction project. 5 U.S.C. § 706. Russellville also requests an interpretation of the Consent to Easement agreement ("Consent") issued by the Corps to Russellville's predecessor-in-title, Joe Phillips. 28 U.S.C. § 2201. Based on the administrative record, the undisputed facts are as follows.

Russellville purchased land from Phillips near Arkansas Tech University in order to build student housing. The Corps has had a flowage easement over the property, below the 334-foot elevation line, since 1964. AR-2207. It does not have an easement above the 334-foot elevation line. *See id*. The easement deed provides that no structures for human

habitation may be constructed on the easement, due to flooding risks. *See id.* In 1993, the City of Russellville requested permission from the Corps to remove dirt from the part of Phillips's property that was within the flowage easement, to use as fill for a street project. The Corps consented, and 7,000 cubic yards of dirt were taken from the northernmost ten acres of Phillips's property. AR-1550, 1553.

Three years later, the Corps gave consent to Phillips to place 7,000 cubic yards of fill dirt on the southern portion of the property within the flowage easement, up to the point where the borrowed dirt had been removed. AR-1575. Section 408 policies provide that a Consent is "a written agreement between the holder of an easement and the owner of the underlying fee estate, that allows the owner of the underlying fee estate to use (or authorize another to use) their land in a manner that the easement holder has determined will not interfere with the easement holder's rights. A consent does not grant an interest in real estate and is not an outgrant." AR-613.

In July 2018, Jason Mann, the chief of the Corps's Real Estate Division, sent a letter to Russellville stating that the Consent "is still in effect." AR-732. Mann's letter also states that the Consent "does not authorize the construction of structures in the flowage easement." *Id.* In September 2018, the Corps informed Russellville that the Consent was granted solely to Phillips, does not run with the land, and that Russellville does not have authority to place fill dirt onto the easement. AR-710.

Russellville submitted a section 408 request, using technical analysis conducted by

an environmental consulting firm named FTN. AR-140. FTN's "volume displacement calculation" concluded that Russellville's proposal would not have a statistically significant impact on water elevation and velocity in the flowage easement. *Id.* The Corps rejected the volume placement calculation in favor of a hydraulic model, stating that the volume placement calculation did not account for the fact that Russellville's property is in area with slope. AR-50. FTN then submitted a hydraulic model. AR-50, 61, 81, 129, 680.

The Corps concluded that Russellville's proposed construction could reduce sump capacity, increase flood heights in downtown Russellville, and increase channel velocities in the event of flooding. AR-53. The Corps wrote that this is the case because the proposed project would be located in the natural flood plain between Prairie Creek and Engineer Ditch, the two primary floodways that drain into the Prairie Creek Pumping Station sump, a Corps works project. AR-1.

The Corps has a project, the Prairie Creek Section 205 project, whose design is ninety percent complete. This project, which will store runoff from the Prairie Creek watershed, would be impacted by Russellville's student housing project. AR-1. Agency guidelines provide that, if an authorized Corps project will be negatively impacted by a requester's proposed project, "any further evaluation should be terminated and the requester notified." AR-632, E.C. No. 1165-2-220. Additionally, Executive Order 11988 requires federal agencies to avoid the modification "support of floodplain development whenever there is any practicable alternative." AR-2. For all of these stated reasons, the Corps denied

Russellville's request. AR-1, 52.

## II. LEGAL STANDARD

Summary judgment is appropriate when there is no genuine dispute of material fact, and the moving party is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(a); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249–50 (1986). In the context of summary judgment, an agency action is entitled to great deference. *See Titan Wheel Corp. of Iowa v. U.S. Envtl. Prot. Agency*, 291 F. Supp. 2d 899, *907 (S.D. Iowa Nov. 10, 2003). The Administrative Procedures Act ("APA") requires that a court set aside an agency's action when the action is arbitrary, capricious, or an abuse of discretion. 5 U.S.C. § 706(2)(A). Administrative action is arbitrary and capricious only when it is not supportable on any rational basis. *Falk v. United States*, 452 F.3d 951, *954 (8th Cir. 2006). A court determines whether the agency examined relevant data, stated a satisfactory explanation for its decision, and included a rational connection between the facts and the decision made. *Dep't. of Com. v. New York*, 139 S.Ct. 2551, 2569 (2019). If the record before an agency does not support its action, the reviewing court should remand to the agency for additional investigation or explanation. *Fl. Power & Light Co. v. Lorion*, 470 U.S. 729, 744 (1985).

## III. DISCUSSION

A. <u>The Consent</u>

Russellville's request for a declaration of the rights granted by the Consent is denied because the Consent is not a contract. The Declaratory Judgment Act, 28 U.S.C. § 2201,

4

permits a court to interpret a contract, by issuing a declaratory judgment in order to settle "an actual controversy before it ripens into a violation [of] law, or a breach of contractual duty." *Maytag Corp. v. Int'l Union, United Auto., Aerospace & Agric. Implement Workers of America*, 687 F.3d 1076, 1081 (8th Cir. 2012) (citing *Rowan Cos. v. Griffin*, 876 F.2d 26, 28 (5th Cir. 1989)). The problem here is that Phillips did not give consideration for the Consent, *see* AR-1575. *Kearney v. Shelter Ins. Co.*, 71 Ark. App. 302, 306 (Ark. Ct. App. 2000) (consideration required to form a contract).

    B.    The Section 408 Process Applies

Russellville first argues that the Consent is still in effect, so it is not required to obtain Corps approval under section 408. Pl.'s Supp. Br. Mot. Summ. J. ("Pl.'s MSJ Br.") at 20, 31, Doc. No. 18. Russellville argues that the Corps allowed removal of dirt from the northern portion of the easement and placement of that dirt on the southern portion. Since not all of the dirt has been moved, it may place the remainder on the southern portion and construct housing above the 334-foot elevation line. Because the proposed housing would be "entirely on the land within the property covered by the Consent," Russellville argues, the Corps has no authority over that property and the section 408 process does not apply. *Id*. at 31.

Russellville's argument does not prevail because, whether or not the Consent is in effect, section 408 approval is required because the Corps has projects—Russellville Dike, Prairie Creek Pumping Station sump, and the Prairie Creek 205 area—that would be

impaired by Russelville's project. *See* 33 U.S.C. § 408(a); AR-74–77, 94–97. This is discussed below in greater detail. Further, the section 408 policy and procedural guidance, AR-621, "applie[s] to alterations proposed within the real property identified and acquired for the USACE project," and Russellville's planned pedestrian bridge would be placed within the planned channel of the Prairie Creek Section 205 project, *see* AR-50.

    C.    <u>APA Review</u>

Russellville's motion for summary judgment is denied, and defendants' cross-motion for summary judgment is granted because the Corps's denial of Russellville's section 408 request was not arbitrary or capricious.

*1. The Corps Examined Relevant Data*

In determining whether an agency acted arbitrarily and capriciously under the APA, a reviewing court considers whether the agency examined relevant data in making its decision. *See Dep't. of Com.*, 139 S.Ct. at 2569. The Corps examined relevant data related to the proposed student housing in evaluating Russellville's section 408 request. FTN submitted a memorandum to the Corps for review, using the requisite hydraulic model. The administrative record shows that Julia Smethurst, the Corps's section 408 coordinator, reviewed FTN's analysis and concluded that the "proposed alterations reduce sump capacity, which increases flood heights in downtown Russellville and [water] channel velocities to as much as 5.30 ft./s," from 3.09 ft./s. AR-53.

Russellville argues that, if section 408 permission is required, the Corps's denial is

arbitrary and capricious. Pl.'s MSJ Br. at 34, 43. Russellville contends that FTN submitted its modeling and analysis to the Corps, AR-61, only after the Corps failed to provide guidance on the scope of analysis and data that should have been included. Pl.'s MSJ Reply at 22. Russellville argues that the Corps did not prepare a countervailing model or study to refute the information that FTN provided about the housing proposal. *Id*. at 23. Further, Russellville argues, FTN's analysis and modeling were closely aligned with the Corps's own modeling of water surface levels, "and there were no significant differences or changes in such levels." *Id*.

In response, the Corps argues that it is not required to conduct its own scientific studies to determine the impacts of Russellville's proposed housing development, and to do so would be an inappropriate use of public resources. Defs.' Br. Cross Mot. Summ. J. ("Defs.' Cross Br.") at 17, Doc. No. 22. The Corps argues that the section 408 request process places the burden on the requester. The administrative record supports that if hydrologic and hydraulic analyses are necessary as part of a request, it is the responsibility of the requester, not the Corps, to provide them. AR-680 ("The requester will be responsible for the analysis."). The Corps also argues that FTN's second memorandum, which included the requisite hydraulic modeling, contains no "statement about the significance or insignificance of the changes in water surface elevation and channel velocity," unlike its initial memorandum. Defs.' Cross Br. at 19.

Rusellville may be correct that a hydraulic analysis conducted by an additional firm

may have provided further insight, but courts do not ask whether an agency's action was "'the best one possible' or even whether it was 'better than [any] alternatives.'" *Dep't Com.*, 139 S.Ct. at 2571 (quoting *FERC v. Elec. Power Supply Ass'n.*, 136 S.Ct, 760, 782 (2016)). Further, there is no precedent for the position that an agency is required to conduct its own scientific studies.

### 2. The Corps Stated Satisfactory Explanation

Courts also consider whether the agency has satisfactorily explained its decision, which does not mean that a court may substitute its own judgment for that of the agency. *Dep't. of Com.*, 139 S.Ct. at 2569. The Corps provided a satisfactory explanation for denying Russellville's section 408 request.

The Corps denied Russellville's proposed project because the project would increase flood risks to people and property. The Corps highlights that "a 100-year flood places the [proposed] apartments' first floors, parking lots, and exits underwater 2 to 3 feet." AR-52. The goal of avoiding this flooding, however remote, which could "deny escape," is a rational explanation for denying the construction of this new housing. The Corps also states that Russellville's proposal would impair the usefulness of other Corps projects. AR-1; *see* 33 U.S.C. § 408(a). Based on FTN's hydraulic model, the Corps concluded that the Prairie Creek cross sections go through the proposed apartment complex at three locations. Defs.' Cross. Br. at 19. Further, Russellville's project would obstruct the natural flow of floodwater into the sump area, which is an "integral" part of the Corps's Russellville Dike and Prairie

8

Creek Pumping Station project. *Id*. at 20; AR-50, 140, 470, 861, 1723, 1852. Russellville's "planned pedestrian bridge placed within the planned channel of the Prairie Creek Sec 205 project . . . raised flood heights and anyone using it would be [at] significant risk of loss of life during a 100-yr flood event." AR-50.

Russellville argues that Smethurst distorted FTN's findings on the maximum water surface level change for the Prairie Creek and Engineers Ditch. Pl.'s MSJ Br. at 41. Russellville contends that the Corps exaggerated FTN's findings on potential water surface level changes, in order to safeguard the Corps's projects. *Id*. at 45. The Corps is undoubtedly interested in maximizing the effectiveness of its works projects, but "a court may not reject an agency's stated reasons for acting simply because the agency might also have had other unstated reasons." *Dep't. of Com.*, 139 S.Ct. at 2573.

### *3. Rational Connection between Facts and Decision*

A rational connection exists between the Corps's factual findings and its decision. *Dep't. of Com.*, 139 S.Ct. at 2569. The Corps operates under the ongoing obligation to "avoid to the extent possible long and short-term adverse impacts associated" with floodplain modification. AR-2; Exec. Order 11988. The Corps's projects would be negatively impacted—however slightly—by Russellville's proposed housing development.

### IV. CONCLUSION

For the foregoing reasons, Russellville's motion for summary judgment [Doc. No. 16] is denied. Defendant's cross-motion for summary judgment [Doc. No. 21] is granted.

IT IS SO ORDERED this 31st day of March, 2021.

_____
UNITED STATES DISTRICT JUDGE